

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 6:05-CV-0806-HFF |
| JAMES W. SEGURA, as Special Administrator for the Estate of Randall Barrett Eller, JANE S. GILLILAND, as Personal Representative of the Estate of Rex Steward Gilliland, Jr., ERIC DUSTON BURNETTE, ANDREW R. STEFANICK, WILLIAM BLAKE BUCHANAN, TIMOTHY ERIC CANTRELL, RODNEY D. MCKELLVIE and JERRY A. MARTINEZ, | § § § § § § § § § § | |
| Defendants. | § | |

---

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This is a declaratory judgment action.  The Court's jurisdiction in the matter rests on 28 U.S.C. § 1332 and other relevant statutes.  Pending before the Court is Plaintiff's Motion for Summary Judgment.  Having carefully considered the motion, the response, the reply, the supplemental briefings, the record and the applicable law, it is the judgment of this Court that Plaintiff's Motion for Summary Judgment shall be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY[1]

Randy and Ruth Eller (collectively, the Ellers) are the parents of the late Randall Barrett Eller (Randall).  Randall "left" the Eller's home on May 3, 2002 (Dep. of Ruth Eller 55), and was killed on June 19, 2002, in an automobile accident in which he was the driver.  It is alleged that Randall was at fault in causing the accident.  The truck that Randall was driving was purchased within 30 days of the date of the accident.

The accident also killed a passenger, Rex Stuart Gilliland, and injured other passengers, namely, Eric Burnette, Andrew Stefanick, William Buchanan, Rodney McKellvie and Jerry Martinez.

Randy Eller is the named insured on Nationwide policy number 6139K607757.  That policy provided coverage for a 1999 Mercedes SL500 and a 2001 BMW X5.  Ruth Eller was named as an insured driver.  Nationwide also issued a personal umbrella policy to Randy Eller, policy number 6139PU553449.  The automobile policy provides liability coverage of $500,000 and underinsured motorist coverage of $500,000.  The personal umbrella policy provides limits of $5 million per occurrence.

The policies provide, in relevant part,

> **USE OF OTHER MOTOR VEHICLES**
> [Coverage will be provided for:]
> 1.    A **motor vehicle you** do not own, while it is used in place of **your auto** for a short time.  **Your auto** must be out of use because:
> a) breakdown;
> b) repair;

---

[1]At the summary judgment stage, the facts are construed in the light most favorable to the non-movants who, in this instance, are Defendants.  Thus, the Court has generally adopted the factual background section of Defendants' Reply to Summary Judgment here.

c) servicing; or
d) loss.

2.  A four-wheel **motor vehicle** newly acquired by **you**. This coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**.  If the newly acquired vehicle does not replace **your auto**, all household vehicles owned by **you** must be insured by **us** or an affiliate for this extension of coverage to apply.

**We** provide this coverage only if **you** do not have other insurance.  **You** must pay any added premium resulting from this coverage extension.

3.  A **motor vehicle** owned by a non-member of **your** household and not covered in Item 1. of this section.

a)  This applies only to policies issued to persons (not organizations) and while the vehicle is being used by **you** or a **relative**.  It protects the user, and any person or organization, except as noted in b), who does not own the vehicle but is legally responsible for its use.

b)  This does not apply to losses involving a **motor vehicle**:

(1)  used in any business or any occupation of **you** or a **relative** except a **private passenger auto** (this does include a motorcycle) used by **you**, **your** chauffeur, or **your** household employee;

(2)  owned, rented or leased by an employer of an **insured**;

(3)  rented or leased by anyone for or on behalf of an employer of an **insured**; or

(4)  furnished to **you** or a **relative** for regular use. Furnished for regular use does not include a **motor vehicle** rented from a rental company for less than 28 days.

(Automobile Policy L2.) (emphasis in original).

3

"RELATIVE" means one who regularly lives in **your** household and who is related to you by blood, marriage or adoption (including a ward or foster child).  A **relative** may live temporarily outside of your household."  (Automobile Policy D1.) (emphasis in original).

"YOUR AUTO" means the vehicle(s) described in the Declarations."  (Automobile Policy D1.)

> **OTHER PERSONS**
> For the elected coverages, **we** will also pay damages, including derivative claims, which are due by law to other persons who suffer **bodily injury** while using or occupying with your permission:
>
> 1. **your auto**.
>
> 2. a **motor vehicle you** do not own, while it is used in place of **your auto** for a short time.  **Your auto** must be out of use because of:
>     a) breakdown;    c) servicing; or
>     b) repair;    d) loss.
>
> 3. a four-wheel **motor vehicle** newly acquired by you to which the Auto Liability coverage of this policy applies. The coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**.

(Automobile Policy U1.)  (emphasis in original).

The umbrella policy does not apply to "an **occurrence** arising out of the ownership, maintenance or use of . . . a land motor vehicle . . . unless insurance is provided by a **listed underlying policy**.  (Umbrella Policy 4.) (emphasis in original).  Additionally, under the umbrella policy, an insured is limited to relatives living in the insured's household.  (Umbrella Policy 2.)

According to Defendants, none of the passengers have been compensated for their injuries/death.  This declaratory judgment action will determine whether coverage existed as to the deceased, the injured and/or their families.

### III.    STANDARD OF REVIEW

*A.    Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.  Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

B.    *Policy Interpretation*

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *Nationwide Mut. Ins. Co. v. Commercial Bank*, 325 S.C. 357, 360, 479 S.E.2d 524, 526 (1996) (citation omitted). The Court must afford policy language its plain, ordinary, and popular meaning. *Diamond State Ins. Co. v. Homestead Indus. Inc*., 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract. *Yarborough v. Phoenix Mut. Life Ins. Co*., 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976).

The insurer's duty under a policy of insurance is set forth by the terms of the policy and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 137, 390 S.E.2d 471, 474 (1990). When ambiguous or conflicting terms are found in an insurance policy, however, those terms must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co*., 318 S.C. at 236, 456 S.E.2d at 915.

The extent to which courts interpret the language of an insurance policy differently is evidence of ambiguity. *Greenville County v. Ins. Reserve Fund*, 313 S.C. 546, 548, 443 S.E.2d 552, 553 (1994). Courts may look to a dictionary to decipher the meaning of ambiguous, undefined terms. *Id*. Nevertheless, if the intent of the parties is clear, the Court has no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co*., 318 S.C. at 236, 456 S.E.2d at 915.

Where a motion for summary judgment presents a question pertaining to the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *Moss v. Porter Bros., Inc*., 292 S.C. 444, 447, 357 S.E.2d 25, 27 (1987) (citation omitted). Summary judgment is appropriate in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id*.

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co*., 160 S.E.2d 523, 525 (S.C.1968). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage. *Boggs v. Aetna Cas. & Sur. Co*., 272 S.C. 460, 252 S.E.2d 565, 568 (1979).

## IV.     CONTENTIONS OF THE PARTIES

Plaintiff argues that the truck being operated by Randall at the time of the accident does not qualify as a covered auto under automobile policy number 6139K607757. Moreover, Plaintiff

7

contends that Randall does not qualify as an insured under the policies. That is, according to Plaintiff, Plaintiff is neither required 1) to provide a defense to the Estate of Randall in any accident-related litigation nor 2) to provide any uninsured or underinsured motorist coverage to Defendants, because Randall was not an insured and the truck he was driving was not a covered automobile under the subject policies. Defendants dispute these assertions.

## V.    DISCUSSION

    *A.    Whether Randall's truck and/or Randall were covered under the policies*

Plaintiff maintains that there is no genuine issue of material fact as to whether Randall's truck was covered under the policies. The Court agrees.

Under the terms of the policy, "your auto" is defined as "the vehicle(s) described in the declarations." (Automobile Policy D1.) Randall's truck is not listed in the declarations. Hence, it is not a covered automobile according to the terms of the policies.

Although there are certain provisions in the policies that might appear to render coverage, when examined more closely, the Court finds them to be inapplicable to the facts of this case.

First, the policy provides for temporary replacement vehicle coverage.

    1.    A **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because:
        a) breakdown;
        b) repair;
        c) servicing; or
        d) loss.

(Automobile Policy L2.) (emphasis in original). Because, among other things, there is no evidence that any of the above-referenced situations were present here, the Court finds this provision of no consequence.

Second, the policy also provides for newly acquired coverage.

> 2.   A four-wheel **motor vehicle** newly acquired by **you**. This coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**.  If the newly acquired vehicle does not replace **your auto**, all household vehicles owned by **you** must be insured by **us** or an affiliate for this extension of coverage to apply.
>
> **We** provide this coverage only if **you** do not have other insurance.  **You** must pay any added premium resulting from this coverage extension.

(Automobile Policy L2.) (emphasis in original).

The policy defines "you" in the policy as "the policyholder or spouse if living in the same household."  (Automobile Policy D1.)  Despite Defendants' assertions to the contrary, the evidence in the record makes clear that Randall, not the Ellers, acquired the truck.  Thus, this section of the policy does not apply in this action.

Third, the policy also provides coverage owned by a non-member of the insured's household.

> 3.   A **motor vehicle** owned by a non-member of **your** household and not covered in Item 1. of this section.
>
> a)   This applies only to policies issued to persons (not organizations) and while the vehicle is being used by **you** or a **relative**.  It protects the user, and any person or organization, except as noted in b), who does not own the vehicle but is legally responsible for its use.
>
> b)   This does not apply to losses involving a **motor vehicle**:
>
>> (1)   used in any business or any occupation of **you** or a **relative** except a **private passenger auto** (this does include a motorcycle) used by **you**, **your** chauffeur, or **your** household employee;
>>
>> (2)   owned, rented or leased by an employer of an **insured**;

(3) rented or leased by anyone for or on behalf of an employer of an **insured**; or

(4) furnished to **you** or a **relative** for regular use. Furnished for regular use does not include a **motor vehicle** rented from a rental company for less than 28 days.

(Automobile Policy L2.) (emphasis in original).

In arguing that summary judgment as to this provision of the policy is appropriate, Plaintiff contends that there is no genuine issue of material fact as to whether Randall was a relative of the insured, as that term is defined in the subject policy.  The Court agrees.

As set forth above, the policy defines "relative*"* as " one who regularly lives in **your** [the Ellers'] household and who is related to you by blood, marriage or adoption (including a ward or foster child).  A **relative** may live temporarily outside of your household."  (Automobile Policy D1.) (emphasis in original).  The Court must consider, therefore, whether Randall regularly lived in the Eller's home.

It has been long held in the common law of this state that "[t]he question of a person's place of residence depends upon his  intention, as evidenced by his acts and declarations.  This is a question of fact." *Barfield v. J.L. Coker & Co.*, 73 S.C. 181, 184, 53 S.E. 170, 171 (1906); *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 581, 500 S.E.2d 496, 497 (Ct. App. 1998) (stating that the determination of resident relative status is a question of fact).

At first blush, the record appears to contain evidence on which the trier of fact in this case could find that Randall regularly lived in his parents' home, (*e.g.* Dep. of Eric Duston Burnette 15) (maintaining that Randall "said he was living at home" with his mother and father.), but it also

appears to contain evidence to the contrary, (*e.g.* Dep. of Ruth Eller 89) (stating that Randall never

"re-establish[ed] his residency in" his parents' home).  A closer look, however, reveals otherwise.

The Court finds the following analysis from the Third Circuit instructive:

> Something occurs regularly, if it recurs at "fixed or uniform intervals."  Webster's New Collegiate Dictionary 974 (7th ed. 1973).  A person lives where they "occupy a home."  So to "regularly live" somewhere means to occupy that particular home at fixed intervals.  When we combine the dictionary definition with the facts of everyday life, it is clear that to occupy a home means to be able to call that place one's own, to claim it as a place where one has a right to be.  The word home itself connotes a place where one belongs and can always go with the certainty that he will be taken in.  It connotes not only a physical place, i.e. the place where one eats meals, sleeps, socializes and generally spends time when not "otherwise engaged with the activities of life," but a sense of belonging.  This definition clearly excludes persons who are mere visitors to the residence, however frequently they may visit and however certain they may be that they will always be taken in.

*Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098,1102-03 (3d Cir. 1991) (citations

omitted).

Arguing that Randall regularly lived with the Ellers, Defendants assert, among other things,

that

> Randall had a room at his parent's home until his death.   Further, Randall received all his mail at his parents' home and with their consent since he never established a residence elsewhere in the weeks prior to his death. His driver's license listed his parents' home as his home.   The Ellers had paid tuition for Randall to attend the University of Georgia.  Randall did not work to support himself prior to his death nor paid for his own health insurance but was kept on his dad's policy at work.

(Def.'s Adden. Rpl. 3.)  While these facts might be helpful if the Court were attempting to determine

Randall's residency pursuant to the common law, they are not determinative of the question of

whether Randall regularly lived with the Ellers.

11

As noted above, "to 'regularly live' somewhere means to occupy that particular home at fixed intervals." *Budd-Baldwin*, 947 F.2d at 1102. There is no evidence in the record that demonstrates that Randall occupied his parents' home at any fixed intervals. In fact, according to Ruth Eller, Randall did not spend the night at the Eller's home, he did not move any of his belongings back to the house, and he did not have access to the house if his parents were not there. (Dep. of Ruth Eller 90.) Accordingly, the Court finds that Randall did not regularly live in the Ellers' home and, thus, by the terms of the policy, he was not a relative. Accordingly, summary judgment will be entered for Plaintiff as to this issue.

B.     *Whether Randall can be both a relative and a "non-member" of the Eller household*

Defendants alternatively contend that (1) the terms "non-member" and "relative" are mutually exclusive, thus causing an ambiguity, and (2) Randall was both a relative and a non-member of the household. The Court is unpersuaded.

As observed by Plaintiff,

> a non-member of the insured's household is someone who lives elsewhere and . . . the term non-member and relative are mutually exclusive. Randall Eller would have to be one or the other. If he is a non-member of his parents' household then he cannot be a relative. The opposite is also true. Therefore, if Randall can only be either a relative or a non-member, then his status as either is immaterial to the consideration of Nationwide's motion for summary judgment. If he is a relative, then there is no coverage for the claims against him because he was not using a covered auto. On the other hand, if he is a nonmember of his parents' household, then he is not covered because only the named insured or a relative is covered while using a vehicle owned by a non-member of the household.

(Pl.'s Prop. Defns. 5.) Thus, summary judgment will be entered for Plaintiff on this issue.[2]

_____

[2]It appears that this policy is meant to cover the insured or an insured's relative (living with the insured) who is driving the automobile of someone who is a non-member of the

C.     *Whether the policies provide for any coverage for any of the occupants*

As to the other occupants of the truck, the underlying policy provides, in relevant part, the

following:

> **OTHER PERSONS**
> For the elected coverages, **we** will also pay damages, including
> derivative claims, which are due by law to other persons who suffer
> **bodily injury** while using or occupying with your permission:
>
> 1. **your auto**.
>
> 2. a **motor vehicle you** do not own, while it is used in place of **your**
> **auto** for a short time.  **Your auto** must be out of use because of:
>     a) breakdown;    c) servicing; or
>     b) repair;    d) loss.
>
> 3. a four-wheel **motor vehicle** newly acquired by you to which the
> Auto Liability coverage of this policy applies. The coverage applies
> only during the first 30 days **you** own the vehicle, unless it replaces
> **your auto**.

(Automobile Policy U1.)  (emphasis in original).

As already observed, the subject truck was not listed in the policy declaration.  As such, no

coverage is triggered by section 1. above.  Moreover, the Ellers had not newly acquired the truck,

nor did they own it.  Further, there is not evidence in the record that their own automobiles were

broken down, being repaired, being serviced, or lost.  Therefore, the Court concludes that judgment

as to this issue must be entered for Plaintiff.

D.     *Remaining arguments*

The Court has considered Defendants' remaining arguments, but finds them to be without

merit.  Therefore, the Court will enter judgment accordingly.

---

household.  The fact that Randall was not covered by such a policy does not render the language
ambiguous.

**VI.     CONCLUSION**

Wherefore, it is the judgment of this Court that Plaintiff's automobile and personal umbrella policies do not offer either liability, uninsured, or underinsured overage to Defendants related to the accident involving Randall because (1) Randall's truck was not a covered automobile according to the clear terms of the insurance policy, and (2) Randall was not covered by the policies in that he was not a resident relative of Randy Eller's household as defined by the policy.

Accordingly, Plaintiff's policies do not provide liability coverage or a defense to the Estate of Randall Eller in the underlying actions.  In addition, the Court declares that the policies do not provide uninsured or under insured motorist coverage to Defendants on account of the injuries and/or death they sustained in the June 19, 2002, accident.  Thus, Plaintiff's Motion for Summary Judgment must be **GRANTED**.

**IT IS SO ORDERED**.

Signed this 24th day of September, 2007, in Spartanburg, South Carolina.


s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE

14